**WERTH et al., Appellants,**

v.

**DAVIES, Appellee, et al.**

[Cite as *Werth v. Davies* (1997), 120 Ohio App.3d 563.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960133.

Decided June 25, 1997.

*Rosenhoffer, Nichols & Schwartz* and *James A. Hunt,* for appellants.

*Rendigs, Fry, Kiely & Dennis* and *Paul W. McCartney,* for appellee.

*Per Curiam.*

This is a dental malpractice case arising out of two root canal procedures performed by defendant-appellee Donald Davies, D.D.S., on plaintiff-appellant Linda Werth. As a result of injuries sustained from the alleged dental malpractice, Werth and her husband, plaintiff-appellant Joseph, filed an action against Davies, Davies's employer Jerome Siegal, D.D.S., Inc., and the XYZ Dental Corporation. A jury verdict was rendered in favor of all defendants. The Werths appeal from the judgment in favor of Davies entered on the jury's verdict.[1]

### FACTS

On April 20, 1993, Linda Werth saw her family dentist for a chipped lower left molar and an odd sensation in teeth numbers seventeen and nineteen. After taking x-rays, her family dentist referred her to Davies, an endodontist, for a possible root canal. Davies performed two root canals the next day. Davies gave Werth two anesthetics, lidocaine and marcaine, by separate injections, to deaden the three branches of the trigeminal nerve. The entire procedure took about four hours.

That night Werth awoke with a burning sensation and numbness in the face and chin and was unable to get back to sleep. She spoke with Davies by

---

1. The notice of appeal designates only the verdict in favor of Davies to be the subject of this appeal and does not indicate anything about the verdict in favor of Siegel, Inc., or the XYZ Corporation. Therefore, the only appellee in the case is Davies.

telephone early the next morning, April 22, reporting severe burning in the lip and chin.

Following his telephone conversation with Werth, Davies noted these complaints in her chart, adding that the procedure had been uneventful and that the x-rays looked perfect. He later recalled that in that telephone call she also complained that her tongue was numb, although that was not contemporaneously charted. Werth denied telling him this.[2]

In mid-May, Werth was still suffering numbness and painful burning in her face and lower lip. She consulted with two oral surgeons and a neurologist, who all confirmed permanent neurologic damage.

## PERTINENT MEDICAL INFORMATION

The trigeminal nerve, which was the nerve deadened by the anesthetic in this case, separates into three branches where the jaw joins together. The buccal nerve serves the lower cheek. The lingual nerve innervates one side of the tongue. The inferior alveolar nerve provides sensation for the lips and chin. This last nerve runs directly under the two teeth that underwent the root canal procedure.

The purpose of a root canal is to save a tooth by removing the decayed tissue from the inside of the tooth and replacing it with sterile material. An endodontist does this by making a hole in the top of the tooth, reaming out the tooth, and filling it with a substance called gutta percha, which has been treated with a dental sealant. In this case, the dental sealant used by Davies contained eugenol, oil of clove, which is used to sedate nerve endings. While performing a root canal procedure, the endodontist is unable to determine directly the area that needs to be cleaned out. The goal is to clean out the entire tooth without passing instruments beyond the apex of the tooth. To accomplish this, the endodontist introduces a file into the canal and takes an x-ray to determine the length of penetration. The area is then cleaned out by introducing a series of files into the tooth and using various instruments to remove dead tissue. It is critical that neither the eugenol nor the gutta percha intrudes into the alveolar canal beneath the teeth.

---

2. The numbness of the tongue is apparently relevant for two reasons. First, it indicates that any damage to the nerve would have occurred at a point before the trigeminal nerve divides into the three branches, a theory supported by Davies's experts in this case. Second, it provides a justification for Davies's assessment of the situation, that the anesthetic had not yet worn off.

## MEDICAL TESTIMONY

The Werths presented two expert witnesses, a dentist and an anesthesiologist. It was their opinion that Werth's injury was only to the inferior alveolar branch of the nerve, at the site of the root canal, and that it was probably caused by either overinstrumentation or overextension of the filling material on the tooth. They considered this a deviation from the standard of care. Dr. John McDonald, an oral surgeon who diagnosed and treated Werth for her nerve damage, also testified for the Werths at trial.

Davies presented three experts, an endodontist, an oral surgeon, and a neurologist. All three believed that the injury occurred at the anesthetic injection site, not at the site of the root canal. None of Davies's experts found a deviation from the standard of care. Only the endodontist and the oral surgeon testified about causation. They testified that in their opinions the injury was caused either by some kind of metabolic or toxic process from the anesthetic, by needle trauma, or by a hematoma. Dr. Perkins, a neurologist who diagnosed and treated Werth for her nerve damage, testified that all three divisions of the trigeminal nerve were affected. Davies himself testified that while he did extend a little beyond the apex of the tooth, he did not overinstrument or overfill into the alveolar nerve canal.

After hearing all the evidence in the case, the jury rendered a general verdict in favor of Davies. The Werths have timely appealed and raise three assignments of error.

## FIRST ASSIGNMENT OF ERROR

In their first assignment of error, appellants argue that they were improperly and prejudicially limited in their cross-examination of Davies.[3]

"The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge." *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. An abuse of discretion involves more than an error in judgment. It implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. In order to reverse a judgment for errors occurring at trial, "the reviewing court must not only weigh the prejudicial effect of those errors, but also determine that if those errors had not occurred, the jury or other trier of

---

3. Appellants also allege in their argument, but not in any assignment of error, that they learned at trial that Siegel had abruptly terminated Davies's employment, and that they were not allowed to examine the reasons therefor. We find from the record that this alleged error was neither objected to nor preserved for appeal.

fact would probably have made the same decision." *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.

Before taking Davies's discovery deposition, appellants' counsel, apparently by chance, learned from a local newspaper article that a man named Donald Davies had sued the Archdiocese of Detroit and four priests, alleging that they had sexually assaulted and abused him over a period of years as a young man. Counsel obtained a copy of the complaint in that lawsuit. In it, Davies (who turned out to be the same person as the defendant in this case) alleged that this memory, which he claimed to have recovered in October 1993, explained certain serious emotional, physical, and mental problems he had been having as an adult.[4] Prior to his deposition, Davies apparently filed an amended complaint, describing the abuse with much greater specificity and deleting some of the problems he claimed were related to the childhood abuse.

Prior to trial the court ruled provisionally that the Werths could not inquire into these matters, finding that allowing such testimony "would do more harm than good." Counsel has preserved the issue for appeal by offering both complaints into evidence, making them part of the record, and by timely stating his wish to cross-examine Davies on his impairments.[5]

■ While we do not believe counsel was entitled to an unlimited fishing expedition about matters raised by Davies in his lawsuit, we agree with appellants that they were unduly restricted by not being permitted to inquire on the subject at all. This court has previously held that evidence of a physician's physical illness may well be relevant in a malpractice action. In *Calihan v. Fullen* (1992), 78 Ohio App.3d 266, 604 N.E.2d 761, we held that evidence that a physician was diagnosed with multiple sclerosis was relevant to his ability to comply with the standard of care in performing gall bladder surgery on the plaintiff. Some of the problems from which Davies claimed to be suffering, such as severe posttraumatic stress disorder, anger, insomnia, aggression, and obsession, could well be pertinent to his care of Werth on the day of the root canal procedure. We also note that Davies chose to make this personal information public by filing his lawsuit.

---

4. Davies alleged that he suffered from severe posttraumatic stress disorder, depression, anger, shame, insomnia, aggression, nightmares, flashbacks, physical distress, repression, suppression, emotional distress, and anxiety, among other injuries, as a result of the sexual abuse.

5. As the material the Werths wished to interrogate Davies about was to be used on cross-examination, no offer of proof was necessary to preserve the issue on appeal. Evid.R. 103(A)(2).

This is a case in which everyone agreed that there was a bad result. The jury was given the standard instruction that a bad result, in and of itself, is not malpractice. When a bad result occurs, it can be especially difficult for the jury to determine whether it was from malpractice, and therefore the jury needs all pertinent evidence in deciding this. Evidence of Davies's physical, emotional and mental state is, within limits to be established by the trial judge, pertinent to deciding whether the bad result in this case was due to malpractice. As in *Calihan, supra,* it is relevant to the dentist's ability to comport with the required standard of care. It is a piece of evidence whose probative value is not outweighed by its prejudicial effect so long as the questions are narrowly drawn and limited appropriately, in a manner which we leave to the sound discretion of the trial judge on remand.[6]

■ The trial court abused its discretion in unduly limiting the extent of the Werths' cross-examination of Davies. This is a very close case involving an unusual occurrence. Further, based upon this record, we cannot say that the jury necessarily would have made the same decision had this wrongfully excluded evidence been available for consideration. Accordingly, this assignment of error is sustained.

## THE REMAINING ASSIGNMENTS OF ERROR

We will briefly address the remaining assignments of error because we are remanding this case for retrial.

In their second assignment of error, the appellants argue that the trial court erred in prohibiting them from introducing into evidence the manufacturer's product-information sheet about the product eugenol, the dental sealant used in this case. One of appellants' theories of malpractice was Davies's failure to follow the manufacturer's warnings about eugenol. Appellants sought to bring out, through the testimony of their expert witness Dr. Reuben, the fact that the manufacturer warned against overfilling a root canal and not going beyond the apex of the tooth. There was also a special warning about potential toxicity.

■ When Reuben was deposed for purposes of discovery, he was asked for all of his opinions about Davies's departures from the standard of care. Failure to follow the manufacturer's product warning was not one of these, nor were Reuben's opinions supplemented or updated to include this theory. Therefore, the trial court did not abuse its discretion in excluding the product information. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28

---

6. We agree with appellee that the complaints themselves, especially the factual allegations in the amended complaint, are highly inflammatory and should not be admitted into evidence.

OBR 429, 504 N.E.2d 44; *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444; *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 547 N.E.2d 1203. The second assignment of error is overruled.

In their third and last assignment of error, appellants allege that the trial court erred in allowing two expert witnesses for the defense to testify about possible rather than probable theories of causation.

As we noted in *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 627 N.E.2d 564, a defendant is not obligated to put on testimony about the cause of an injury or to provide an alternative theory about causation. Defendants can avoid a directed verdict on this subject through cross-examination, presentation of contrary evidence that the negligence was not the probable cause of the injury, or presenting evidence of alternative causes of the injury. *Stinson v. England* (1994), 69 Ohio St.3d 451, 456–457, 633 N.E.2d 532, 538. However, if the defendant presents an alternative theory of causation, it must be expressed in terms of probability even though the proponent of the theory does not have the burden of proof on that issue. This goes to the competence of the evidence, not to its weight. *Id.* at paragraph one of the syllabus.

In this case, Dr. Stuart, the endodontist, and Dr. Troiano, the oral surgeon, did testify to the required degree of probability. Stuart testified that the injury was probably caused by the administration of the anesthetic. While Troiano did use the word "possibilities" in discussing his alternative theory of causation, he then, much like the expert in *Stinson*, ruled out the appellants' theories, thus elevating his "alternate" theory to the required degree of certainty. *Id.* at 457, 633 N.E.2d at 538. Thus, we find no error and overrule this assignment of error.[7]

Accordingly, the judgment of the trial court entered on the jury's verdict is reversed, and the cause is remanded for a new trial consistent with this decision.

*Judgment reversed*
*and cause remanded.*

MARIANNA BROWN BETTMAN, P.J., DOAN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

---

7. At oral argument, appellants seemed to raise an assignment of error related to the court's failure to instruct the jury on the issue of informed consent. The issue was not raised in the briefs or argued with particularity. Therefore, we hold that appellants have not properly pursued any issue regarding informed consent in this appeal. App.R. 12(A)(2).