[Cite as *Ward v. Govt. Emps. Ins. Co.*, 2012-Ohio-2970.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

KRISTINE J. WARD                          :

    Plaintiff-Appellant              :           C.A. CASE NO.    24884

v.                                        :           T.C. NO.    10CV5360

GOVERNMENT EMPLOYEES              :            (Civil appeal from
INSURANCE CO., et al.                            Common Pleas Court)

    Defendant-Appellee              :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____29th_____ day of _____June_____, 2012.

. . . . . . . . . .

JEFFREY W. SNEAD, Atty. Reg. No. 0063416, 130 W. Second Street, Suite 1508, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

KEVIN C. CONNELL, Atty. Reg. No. 0063817, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
    Attorney for Defendant-Appellee Bilen Mandefro

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    This matter is before the Court on the Notice of Appeal of Kristine J. Ward,

filed November 4, 2011. On July 8, 2008, Ward was purportedly involved in a pedestrian accident with a vehicle driven by Bilen Mandefro. On August 2, 2011, following trial, a jury unanimously concluded that Mandefro failed to yield the right of way and was negligent in executing a turn. However, the jury found that her negligence was not a direct and proximate cause of Ward's injuries, pain, suffering and damages.

{¶ 2} At trial, Ward testified that on the date of the incident, she took the bus to the library in downtown Dayton, and that as she was returning to the bus stop, carrying a bag on her right shoulder along with several books in her left hand, she stepped, with the light, into the crosswalk on Third Street, headed southbound, and she then felt "a hit on my right side, upper arm. I don't know what that is. I'm spun left, I feel a pain in my foot, I'm on the ground and I'm very worried about being in traffic." Ward stated that before entering the crosswalk, she looked around to make sure it was safe to cross. Ward testified that she felt pain in her foot on impact. She denied that she was in a hurry, and she further denied that she tripped and fell into the car. Ward stated that at the time she was wearing sandals with straps that were not flip flops. When asked if she knew if her foot was run over by the car, she responded, "I don't know." Ward stated she was taken to the hospital by ambulance. She stated that the nail on her big toe was missing, and that her foot was fractured in three places. Ward stated that she had surgery on July 14, 2008, and that her surgeon inserted three pins to stabilize her foot. Ward testified that she continues to experience pain and swelling in her foot.

{¶ 3} On cross-examination, Ward acknowledged that the history of physical injury contained in the emergency room records indicates as follows: "She states she was

crossing a street, in an unknown rate of speed, the car pushed her down as it sideswiped her large bag, which she had under her left arm," and that "she states she was not run over" but "pushed down violently." Ward also acknowledged that she stated in deposition that she did not know how she broke her foot as a result of the incident, and the following exchange occurred:

Q. It all happened very quickly?

A. It did.

Q. And so, as a result you can't tell us how that break happened?

A. Yes.

Q. And what moment it happened?

A. That's right.

{¶ 4} On redirect, Ward denied breaking her foot before she was hit by the car, and she stated that the injury resulted from the impact. She reviewed several histories given by her, including the Dayton Fire Department EMS run report, which provides that her chief complaint is "pain in right foot which may have been run over by the tire of a car." She reviewed an "ortho note" that provides that she "was clipped by a car while walking today. She hit her foot against the ground, is now in complaint of pain in the ED department." Ward reviewed an "emergency department triage note" which provides that "Patient was walking across the street and was clipped from behind by a vehicle, knocking her to the ground." She reviewed a "consultation with Dr. Prayson," which provides that she "presented to the emergency department after being struck by a car."

{¶ 5} The jury also heard the testimony of Dr. Michael Prayson, perpetuated by

means of videotape. Prayson testified that he is an orthopedic surgeon, and that he treated Ward for injuries she sustained on July 8, 2008. Prayson opined to a reasonable degree of medical probability that Ward "did sustain injuries related to that pedestrian versus car collision." Specifically, Prayson testified that Ward sustained "a number of fractures through the front and mid portion" of her right foot, and there was "an evulsion or removal of the toenail to her great toe." Prayson stated that she also had a "Lisfranc" injury in the arch area of her foot. Prayson stated that he performed outpatient percutaneous surgery on Ward's foot under a general anesthetic, inserting three pins to stabilize Ward's fractures. Prayson reviewed Ward's medical records and stated that they were generated as a result of the collision. Prayson indicated that the residual effects of the injury that Ward experienced, including pain and swelling, are permanent.

{¶ 6} On cross-examination, Prayson stated that when forming an opinion regarding a patient's diagnosis, he relies on the patient's history, which he obtains directly from the patient and perhaps other outside sources such as paramedics, friends or relatives, as well as a physical examination and any medical testing that is completed. The following exchange occurred:

Q. For example, if you're going to diagnose simply that someone has a broken bone, the history about what happened is not as relevant to you. You can see it on the light box and see that the bone is broken and make that opinion.

A. That is correct.

Q. But when you come in and testify in court that a broken bone is

caused by something, the history component of that opinion is critical.

A. Yes.

Q. Because you weren't there to see the event.

A. Yes.

\* \* \*

Q. And it indicates \* \* \* in the record the history that was taken by the resident or the nurse or whoever was taking the history from her at the time at the emergency room, that she was not run over.   She was just pushed down violently - -

A. Yes.

\* \* \*

Q.   So other than the history that you now see in the emergency department, do you have any other background in terms of how this accident happened?

A.  No.   I mean, we just - - basically what's reported to us and what information we get from whatever source, \* \* \* that's what we use.

So then there's really not, from a medical standpoint, as you might imagine, there's not a reason to challenge it.

Q. Sure.

A.   Not a reason to investigate it further, the specifics of how it actually happened because it really doesn't, like you said, have much bearing on - - once we identify the injuries and what we have to do with the injuries.

Q. Doesn't bear on the treatment.

A. Correct.

Q. You just want to get her better and make sure that that fracture is aligned and she's back to getting back to her life, correct?

A. Correct.

Q. And you give your, your patients the benefit of the doubt in that respect?

A. Correct.

Q. Do you know what kind of shoes she was wearing that day?

A. I do not.

{¶ 7} The defense presented the testimony of Britt Tompkins, who witnessed the accident from inside the library at a distance of approximately a hundred feet. He stated that Ward was "trying to hurry up" and "[m]aking a big rush" to cross the street, and that she "kind of like tripped over the shoe" and fell. According to Tompkins, "it just looked like that she kind of fell into the vehicle * * * ." Tompkins stated that he did not observe Ward's feet, but he "seen her fall toward the car." Tompkins stated that Ward "kind of like hit the front, like between the mirror and * * * like above the tire, that section there." When he went outside to help pick up her books, Tompkins stated that Ward's right sandal was on her foot but broken and "snapped backwards." On cross-examination, Tompkins stated that he observed the events in his peripheral vision.

{¶ 8} Finally, Mandefro testified that she was driving to work in a Nissan Sentra when the accident occurred, heading southbound on Saint Clair Street. She stated that she

stopped at the light at Third Street and waited to turn left. According to Mandefro, she observed Ward stepping into the crosswalk, and Mandefro judged that she had enough time to safely execute the turn. She stated that she moved forward and "was making that left turn, when all I see is just movement coming towards my car." She stated that she observed the movement in her periphery, and that it "was fast. It was not gradual. It was almost like a propelling. * * * ." Mandefro testified that she observed "an elbow hitting * * * the side mirror of my car." She testified that her vehicle was not damaged but that her side mirror had been moved out of position after the impact. Mandefro stated that after the accident, she observed that Ward's elbow was "scratched up," and her big toe was bleeding.

{¶ 9}   At the close of the defense's case, Ward moved the court for a directed verdict on the issue of proximate cause, arguing that the "only proximate cause testimony from a qualified medical doctor came from Dr. Prayson and he said as a result of this motor vehicle collision, it caused these injuries," and further that the defense failed to provide competent medical evidence of alternative causation. The defense responded that Prayson relied solely upon Ward's version of events and that "the jury could conclude based on the bent sandal, based on the open toe, based on the propelling, based on her falling, all those things the jury could conclude that one can break their toe in any manner of ways, including and not limited to that." The trial court overruled the motion.

{¶ 10}   After the jury's verdict was announced, counsel for Ward moved for judgment notwithstanding the verdict on the issue of proximate cause. The trial court allowed the parties to brief the issue, and Ward filed a motion which the defense opposed. The court subsequently overruled Ward's motion.

{¶ 11} Ward asserts two assignments of error. Her first assigned error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR DIRECTED VERDICT ON THE ISSUE OF PROXIMATE CAUSE AT THE CLOSE OF APPELLEE'S CASE IN CHIEF.

{¶ 12} Civ.R. 50(A)(4) provides:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 13} As this Court recently noted:

We review the grant or denial of directed verdicts *de novo*. In conducting the review, we construe the evidence most strongly in favor of the nonmoving party. A motion for directed verdict must be denied "where there is substantial evidence upon which reasonable minds could reach different conclusions on the essential elements of the claim." *Anousheh v. Planet Ford, Inc.,* 2d Dist. Montgomery Nos. 21960, 21967, 2007-Ohio-4543, ¶ 43. Furthermore, "[i]n deciding a motion for directed verdict, neither the weight of the evidence nor the credibility of the witnesses is to be considered." *Cater v. City of Cleveland*, 83 Ohio St.3d 24, 33,

1998-Ohio-421, 697 N.E.2d 610. *Kademian v. Marger*, 2d Dist. Montgomery No. 24256, 2012-Ohio-962, ¶ 56.

{¶ 14} "The 'reasonable minds' test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the nonmoving party. * * *. " *Lasley v. Nguyen*, 172 Ohio App.3d 741, 2007-Ohio-4086, 876 N.E.2d 1274, ¶ 16 (2d Dist.) "'When a motion for directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to jury.'" *Id*., ¶ 17, quoting *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982). The motion "'raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.'" *Id.*

{¶ 15} "'It is well settled that the elements of an ordinary negligence suit are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach.' * * * ." *Carpenter v. Long*, 196 Ohio App.3d 376, 2011-Ohio-5414, 963 N.E.2d 857, ¶ 115 (2d Dist.). Regarding the element of proximate cause, this Court has previously noted:

"Causation" refers to the cause and effect relationship between tortious conduct and a loss that must exist before liability for that loss may be imposed. * * * While difficult to define, "proximate cause" is generally established "where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act." * * * It is also well settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the

breach of duty caused the particular damage is not sufficient as a matter of law. * * * Further a plaintiff must establish proximate cause by a preponderance of the evidence. * * *. *Innovative Technologies Corp. v. Advanced Management Technology, Inc.,* 2d Dist. Montgomery No. 23819, 2011-Ohio-5544, ¶ 31.

**{¶ 16}** Ward asserts that the defense "failed to adequately refute [her] prima facie evidence that the impact with Appellee's vehicle was the proximate cause of her injuries." She asserts that the nature of her injuries required "more than common knowledge to bridge the gap between injury and the subsequent physical disability caused by the collision" with Mandefro's car. She asserts that the jury should not have been permitted to "entertain Appellee's assertion that [her] injuries resulted from a trip or stub" in the absence of "the corroborating testimony of a medical expert," and that neither the cross-examination of Prayson nor the proffered alternative theory of causation, namely that she injured her foot when she tripped, were sufficient to refute her claim.

**{¶ 17}** Ward directs our attention to *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114 (1970), which held at syllabus: "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion."

**{¶ 18}** Regarding the nature of her injury, Ward further relies upon *Bennett v. Goodremont's, Inc.*, 6th Dist. Lucas No. L-10-1185, 2011-Ohio-1264, ¶ 16-17, which

distinguished between injuries which are matters of common knowledge, and injuries that are "internal and elusive in nature" and accordingly "outside the realm of common knowledge," concluding that the latter require proof of causation by expert medical testimony.

{¶ 19} The cases upon which Ward relies involve the burden of proof placed upon someone injured by the negligent act of another. This burden includes establishing that the negligent act of another is the proximate cause of the injury. "Defendants can avoid a directed verdict on this subject through cross-examination, presentation of contrary evidence that the negligence was not the probable cause of the injury, or presenting evidence of alternative causes of the injury." *Werth v. Davies*, 120 Ohio App.3d 563, 570, 698 N.E.2d 507 (1st. Dist. 1997), citing *Stinson v. England*, 69 Ohio St. 3d 451, 456-57, 633 N.E.2d 532 (1994).

{¶ 20} On cross-examination, the defense adduced testimony that Prayson's opinion was based solely upon the history that Ward related. Prayson testified that he does not investigate the specifics of causation but gives his patients the benefit of the doubt in that respect, since his focus is on treatment. He described the history Ward related to him as "critical," or essential, to his opinion on causation, since he did not observe the collision. In other words, Prayson assumed the truth of her history. Further, as the defense asserts, Prayson did not testify as to how Ward's injuries *actually* occurred. Finally, Prayson stated that he was unaware of the type of shoes that Ward was wearing when she was injured.

{¶ 21} While Ward denied that she tripped and fell into Mandefro's car, the

testimonies of Tompkins and Mandefro both suggest that Ward in fact did so, and that Ward's injury accordingly was not proximately caused by the tortious conduct of Mandefro. Tompkins, the independent eyewitness, stated that Ward was in a "big rush," and that she "tripped over the shoe" and "fell into the vehicle." He indicated that Ward's sandal was snapped backwards, a condition that supports a conclusion that Ward tripped on her open toe sandal (a condition of which Prayson was unaware). Mandefro's testimony that Ward hit the mirror of her car in a rapid, "propelling" motion is consistent with the testimony of Tompkins.

{¶ 22} Construing the evidence most strongly in favor of the defense, we find that reasonable minds could differ with respect to the element of proximate cause as a matter of law. Accordingly, the trial court properly submitted the issue of causation to the jury. Ward's first assigned error is overruled.

{¶ 23} Ward's second assignment of error is as follows:

THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT

OF THE EVIDENCE.

{¶ 24} As this Court has previously noted, in a weight of the evidence challenge, an appellate court:

"[R]eview[s] the entire record, weighs the evidence

and all reasonable inferences, considers the

credibility of witnesses and determines whether

in resolving conflicts in the evidence, the jury

clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. *State v. Pierre,* 2d Dist. Montgomery No. 18443, 2001 WL 220239 (March 2, 2001).

**{¶ 25}** As noted by the First District:

The Ohio Supreme Court has recently clarified and explained the standard of review to be applied when assessing the manifest weight of the evidence in a civil case. *Eastley v. Vollman*, - - - Ohio St.3d - - -, 2012-Ohio-2179, - - - N.E.2d - - -. In *Eastley*, the court held that the standard of review for the manifest weight of the evidence established in [*Thompkins*] is also applicable in civil cases. * * * . Consequently, when reviewing the weight of the evidence, our analysis must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which is by a preponderance of the evidence. * * * . We are mindful that, in a bench trial, "the trial judge is best able to view the witnesses and observe their

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It follows that, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Reveiw, Section 60, at 191-192 (1978). *SST Bearing Corporation. v. Twin City Fans Companies Limited,* 1st Dist. Hamilton No. C-110611, 2012-Ohio-2490, ¶ 16.

**{¶ 26}** Further,

While *Thompkins* explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We have explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:

"Because the factfinder, be it the jury or * * * trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the

witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in *Thompkins*, *supra*, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence - in short, how persuasive it is. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, unreported."
*State v. Pierre*, supra.

**{¶ 27}** According to Ward, the jury lost its way when it found that her injuries were not proximately caused by Mandefro's negligence. Ward asserts again that the defense "failed to provide competent evidence that it was even possible that [her] injuries could be caused by a trip." Nevertheless, it was not Mandefro's burden to establish proximate cause; that burden rested with Ward.

**{¶ 28}** As this Court has previously noted:

"[T]he jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the fact finder not to supplant it. (Citation omitted)'" *McBride v. Quebe,* 2d Dist. Montgomery No. 21310,

2006-Ohio-5128, ¶ 5.

{¶ 29} The record reflects that the jury was instructed that they "must determine whether the assumption on which the expert based his opinions are true. If any assumed fact was not established by the greater weight of the evidence, you will determine the effect of that failure on the value of the opinion of the expert," and that they "may believe or disbelieve all or any part of the testimony of any witness," and that "upon you alone rests the duty of deciding what weight should be given to the testimony of an expert."

{¶ 30} After thoroughly reviewing the entire record, weighing the evidence and all reasonable inferences, we cannot conclude that in resolving conflicts in the evidence, the jury lost its way and thereby created a manifest miscarriage of justice. The jury had the opportunity to see and hear all of the witnesses, and it was free to determine which testimony to credit. We defer to the jury's assessment of credibility. On this record, the jury could have simply discredited Prayson's testimony regarding causation because the *assumed* facts on which his opinions were based were not established by the greater weight of the evidence, given the testimony of Tompkins and Mandefro. There being no merit to Ward's second assigned error, it is overruled.

{¶ 31} The judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

GRADY, P.J., concurring:

{¶ 32} The issue was whether the driver of the vehicle, Mandefro, was negligent,

and whether that negligence proximately resulted in the injuries to her foot and related losses of which Plaintiff Ward complained. The jury found that Mandefro was negligent, but that Ward's injuries did not proximately result from that negligence.

{¶ 33} Proximate cause is a question of fact. Though Ward offered expert opinion evidence that her injuries proximately resulted from Mandefro's negligence, the jury was free to reject that evidence if it found a different proximate cause. Defendant was not required to likewise offer expert evidence in order to argue a different proximate cause, because the jury could weigh the evidence presented to find that Ward's injuries resulted or may have resulted from another proximate cause, without the assistance of expert opinion evidence.

. . . . . . . . . .

Copies mailed to:

Jeffrey W. Snead
Kevin C. Connell
Hon. Timothy N. O'Connell