LASLEY, Appellant,

v.

NGUYEN et al., Appellees.

[Cite as *Lasley v. Nguyen,* 172 Ohio App.3d 741, 2007-Ohio-4086.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21968.

Decided Aug. 3, 2007.

742

Ronald J. Maurer, for appellant.

Thomas F. Glassman, for appellee Huong T. Nguyen.

Benjamin W. Crider and Lee M. Smith, for appellee Ohio Bureau of Workers' Compensation.

Dwight D. Brannon and Matthew C. Schults, for appellee Miami Valley Trial Lawyers' Association.

---

DONOVAN, Judge.

{¶ 1} Plaintiff-appellant Kim D. Lasley appeals from a decision of the Montgomery County Court of Common Pleas, which sustained the Civ.R. 12(C) motion for judgment on the pleadings and motion for summary judgment of defendant-appellee Ohio Bureau of Workers' Compensation ("BWC") on September 18, 2006. Lasley also appeals from the decision of the trial court sustaining defendant-appellee Huong T. Nguyen's motion for directed verdict at the close of plaintiff's case-in-chief during trial on November 20, 2006. The trial court issued a written decision sustaining Nguyen's motion for directed verdict on December 5, 2006. Lasley filed a timely notice of appeal with this court on December 27, 2006.

I

{¶ 2} At the time of the accident that forms the basis of this appeal, Lasley was employed by Choices In Community Living as a residential specialist who worked in-home with mentally challenged and disabled clients. Lasley's work duties at Choices included driving her clients to perform daily errands. On December 31, 2004, the day of the accident, Lasley was taking two of her mentally disabled clients to the bank in Englewood, Ohio. Lasley was driving a van owned by Choices. As Lasley was headed eastbound on Taywood Avenue at approximately 10:00 a.m., she observed a black Honda Accord pull out in front of her and strike her van on the front passenger side of the vehicle.

{¶ 3} Lasley testified that she immediately stopped the vehicle and appraised the situation. She testified that she checked on her passengers and found that

neither had sustained any injuries in the accident, which she described to the police officers as a "slight bump." Additionally, Lasley told the police that no one in the vehicle, including herself, was injured, and that everyone in the van had been wearing their seat belts. After the police finished questioning her regarding the accident, Lasley testified that she left the scene in the van, took her clients to the bank, and then went back to the Choices facility and finished her shift. That same day, Lasley was required to file an accident report with her employer. In the report, Lasley indicated again that no one had been hurt during the collision. Further, the van did not require repairs after the accident.

{¶ 4} Nonetheless, at her deposition and at trial, Lasley testified that she began to feel pain in her neck and back within an hour of the accident. Lasley attributed this pain to the injuries she suffered in the accident caused by Nguyen.

{¶ 5} However, testimony was adduced at trial that established that Lasley had an ongoing history of neck and back problems preceding the instant accident by approximately 12 years. Beginning in 1992, Lasley was involved in a motor vehicle accident wherein she claimed neck and back injuries in a lawsuit she filed. In 1997, Lasley suffered a fall in a workplace incident wherein she injured her neck and back again. Lasley testified that she never fully recovered from that accident and that the pain in her neck and back would return from time to time. In 2001, Lasley was involved in another automobile accident in which she again claimed neck and back injuries.

{¶ 6} Further testimony was adduced at trial that revealed that in April 2004, approximately seven months before the accident with Nguyen, Lasley presented at a local chiropractic clinic complaining of two years of chronic back pain, which she attributed to a fall in the year 1999. Trial exhibits clearly indicate that Lasley reported that her pain level at that time was a seven or eight on a scale of one through ten. Lasley returned to the same clinic approximately three months later, still complaining of chronic back pain.

{¶ 7} Additionally, Lasley filed an application with BWC in July 2004, in which she sought an increase in the percentage of permanent partial disability she was then receiving. The record reveals that as late as October 2004, Lasley was still visiting a chiropractor in conjunction with her workplace injury in 1997. In fact, the record clearly establishes that Lasley had visited the chiropractor approximately 45 times in 2004 through the month of October. On October 22, 2004, two months before the accident, Lasley filed an application with the BWC requesting a continuation of her chiropractic treatment, stating that:

{¶ 8} "I need the care because of the constant and reoccurring pain in the left side of my neck, shoulders, and lower back. Chiropractic care relieves this problem and helps me function."

{¶ 9} Lasley's appellate brief, however, states unequivocally that "in the months prior to the December 31, 2004, collision, she had been pain free and was not having any problems with her neck or back."

{¶ 10} In Lasley's first assignment, she argues that the trial court erred when it sustained the defense's motion for directed verdict based upon her failure to present expert testimony at trial on the issue of proximate causation regarding the injuries to her neck and back. In her second and third assignments, Lasley attacks the constitutionality of R.C. 4123.931, the BWC's subrogation statute, as it pertains to her claim for worker's compensation benefits for injuries she allegedly sustained as a result of the accident with Nguyen. She argues that the trial court erred when it granted BWC's motion for judgment on the pleadings or motion for summary judgment on the constitutionality of R.C. 4123.931 prior to trial. It is from this judgment that Lasley now appeals.

II

{¶ 11} Lasley's first assignment of error is as follows:

{¶ 12} "The trial court erred as a matter of law by granting a motion for directed verdict for the defendant by finding a pre-existing medical condition existed and expert medical testimony was required."

{¶ 13} In her first assignment, Lasley contends that the trial court erred when it sustained Nguyen's motion for directed verdict at the close of Lasley's case-in-chief. Lasley argues that in directing a verdict against her, the trial court erred by evaluating the evidence and determining as a matter of law that she suffered from a pre-existing condition with respect to injuries she sustained to her neck and back in a series of incidents beginning in 1992. Lasley further argues that she was competent to testify regarding her injuries and the treatment she subsequently received and that the automobile accident with Nguyen was the proximate cause of the injuries she claims to have suffered. Thus, she concludes that no expert testimony was required with respect to the element of proximate cause. We disagree.

{¶ 14} Civ.R. 50(A)(4) addresses a motion for directed verdict when granted on the evidence or lack thereof. The rule states:

{¶ 15} "When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 16} The "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the nonmoving party. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252. In *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, the Supreme Court of Ohio discussed the following analysis a trial court is to adhere to when ruling on a motion for directed verdict:

{¶ 17} "When a motion for directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to jury. This does not involve weighing the evidence or trying the credibility of the witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The 'reasonable minds' test * * * calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claims. See *Hamden Lodge v. Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469, 189 N.E. 246. Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict. A motion for directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence. To hold that in considering a motion for directed verdict a court may weigh the evidence, would be to hold that a judge may usurp the function of the jury. Section 5, Article I of the Ohio Constitution." Id. at 68–69, 23 O.O.3d 115, 430 N.E.2d 935.

{¶ 18} An appellate court reviews a trial court's ruling on a motion for directed verdict de novo, as it presents the court with a question of law. *Schafer v. R.M.S. Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187. Thus, the trial court's decision is not granted any deference by the reviewing court. *Brown v. Scioto Cty. Bd. of Commissioners* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 19} Lasley argues that she was "clearly qualified to testify herself" regarding the nature and extent of her injuries. Thus, she contends that no expert testimony was required because her claimed injury is something within the knowledge of an average juror. In support of her position, Lasley cites

numerous cases that all stand for the same proposition, namely that where the causal connection between an injury and its specific modality involve questions which are matters of common knowledge, expert medical testimony is unnecessary. *White Motor Corp. v. Moore* (1976), 48 Ohio St.2d 156, 2 O.O.3d 338, 357 N.E.2d 1069. Conversely, where an issue in a case involves a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury, expert testimony is required to furnish the answers. *Stacey v. Carnegie–Illinois Steel Corp.* (1951), 156 Ohio St. 205, 46 O.O. 93, 101 N.E.2d 897.

{¶ 20} While we agree that in some instances the causal nexus between an accident and the alleged injury is so clear as to obviate the need for expert testimony in a personal-injury claim, such is not the case here. In all the cases cited by Lasley that support her assertion that expert testimony is not required to demonstrate proximate causation if the subject matter is within common knowledge of a layperson, there is only one factor that caused the injury in each case. In the instant case, evidence was adduced that established Lasley's long and storied history of neck and back injuries dating from 1992 though October 2004. In fact, evidence was presented that clearly demonstrated that just two months prior to the accident with Nguyen, Lasley filed an application with the BWC requesting a continuation of her chiropractic treatment stating:

{¶ 21} "I need the care because of the constant and reoccurring pain in the left side of my neck, shoulders, and lower back. Chiropractic care relieves this problem and helps me function."

{¶ 22} Lasley was free to testify at trial with respect to the nature and extent of her injuries. However, given her detailed medical history, Lasley was not qualified to testify that the proximate cause of her injuries was the automobile accident in December 2004. The proper manner in which to present evidence regarding proximate causation would have been to enlist the services of a medical expert, or perhaps the testimony of her own chiropractor would have been sufficient on the subject of causation. A properly qualified medical expert would have been able to provide an educated opinion regarding whether the accident occasioned by Nguyen's admitted negligence was a contributing factor to Lasley's purported pain and injury. Without the supporting testimony of a medical expert, Lasley's testimony on its own is clearly insufficient as a matter of law to support a finding that the December 2004 accident was the proximate cause of the injuries to her neck and back. Thus, the trial court did not err when it sustained Nguyen's motion for a directed verdict.

{¶ 23} Lasley's first assignment of error is overruled.

### III

{¶ 24} Lasley's remaining assignments of error are as follows:

{¶ 25} "The trial court erred as a matter of law by finding that R.C. § 4123.931 does not violate the right of due course of law and right to a remedy under Section 16, Article I of the Ohio Constitution and the protections of the private property and the takings clause in Section 19, Article 1 of the Ohio Constitution."

{¶ 26} "The trial court erred as a matter of law in failing to find that R.C. § 4123.931 violates the equal protection clause contained in Section 2, Article I of the Ohio Constitution."

{¶ 27} In light of our disposition with respect to Lasley's first assignment, the remaining assignments of error regarding the constitutionality of R.C. 4123.931 are rendered moot.

### IV

{¶ 28} All of Lasley's assignments of error either having been overruled or rendered moot by our decision, the judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF, P.J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 29} I respectfully dissent from the decision of the majority.

{¶ 30} Section 16, Article I of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 31} The broad guarantees of Section 16, Article I are nevertheless subject to the limitations imposed on the prosecution of claims for relief by rules of practice and procedure promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution. One of those, Civ.R. 50(A)(4), authorizes the court to direct a verdict on any issue determinative of a claim for relief, on the evidence presented, which is adverse to the party that presented the evidence, when the court finds that reasonable minds could only reach that conclusion. However, in so doing, the court must have construed the evidence most strongly in favor of party against whom the verdict is directed.

{¶ 32} In *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, the Supreme Court held:

{¶ 33} "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a *specific subsequent physical disability* involves a *scientific inquiry* and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury." (Emphasis added.) Id., syllabus.

{¶ 34} The claim for relief in *Eastman* arose out of an automobile collision. The plaintiff claimed that as a proximate result of an injury to his nose, he suffered severe nosebleeds that required surgery to correct. The only medical evidence presented showed that the surgery was performed to correct a deviated septum. However, no evidence was offered to show that the deviated septum was a condition that proximately resulted from the collision and the defendant's alleged negligence. The plaintiff's claim that the physical disability, the deviated septum, was somehow connected to the trauma he suffered presented the jury with a scientific inquiry that the jury could not competently resolve without the assistance of expert witness evidence.

{¶ 35} In the present case, defendant's complaint alleges:

{¶ 36} "2. As the proximate result of the negligence of Defendant Huong T. Nguyen, Plaintiff Kim K. Lasley sustained injuries and damages as follows:

{¶ 37} "a. Severe and permanent injuries;

{¶ 38} "b. Great pain and suffering, both physical and emotional, and loss of ability to perform usual function and the injuries will cause further pain and suffering and loss of ability to perform usual functions in the future; and

{¶ 39} "c. Reasonable and necessary medical expenses in an amount yet to be determined, as well as further medical expenses to be incurred in the future."

{¶ 40} Plaintiff Lasley offered her own testimony to prove the injuries and losses alleged in her complaint. The trial court granted defendant's motion for directed verdict on a finding that, in addition, expert evidence was required to prove her claim for relief.

{¶ 41} Plaintiff neither alleged nor sought to prove a "specific subsequent physical disability" similar to the deviated septum in *Eastman*. Plaintiff merely alleged trauma to her person that caused pain and suffering. She is entitled to seek a remedy for her injury in open court. Section 10, Article I, Ohio Constitution. She did not plead and she is not required to prove a particular physical disability in order to prosecute her claim. Therefore, the jury was not confronted with the kind of scientific inquiry that in *Eastman* required proof through expert witness evidence.

{¶ 42} The trial court followed the holding of the First District Court of Appeals in *Rogers v. Armstrong* (Mar. 15, 2002), Hamilton App. No. C–010287, 2002 WL 397728, which applied the rule of *Eastman* to soft-tissue injuries. Injuries of that kind are not readily susceptible to objective diagnosis by a physician, who typically must depend on the patient's subjective complaints to make a diagnosis. Any physician who then recommends a course of treatment on the diagnosis the physician made necessarily assumes the truth of the patient's complaints. There seems to be little purpose in requiring the plaintiff to present evidence of the diagnosis, in addition to the plaintiff's own testimony, to prove that an injury occurred.

{¶ 43} The critical issue is whether the jury can decide the claim for relief without making a scientific inquiry. *Eastman* reasonably required expert witness evidence because, on the record before the court, the jury could not determine the alleged connection between the plaintiff's deviated septum and the trauma she suffered without making the related scientific inquiry. In the present case, it is within the common knowledge of jurors that a jolt resulting from an automobile collision can produce pain and discomfort for persons who are inside the automobile. That's all the plaintiff claimed. Requiring her to produce expert witness testimony to prove the existence and/or operation of a sprain and strain injury that can cause pain of that kind is unnecessary to the inquiry the jury was required to make.

{¶ 44} Invading the jury's function further, the trial court decided that expert testimony was required to sort out the injury plaintiff claims she suffered from her pre-existing medical conditions. It is the defendant's burden to prove that some or all of the pain plaintiff claims was caused by the collision is instead attributable to her pre-existing conditions. Those facts may weigh against the plaintiff's case in the eyes of the jury, but they are not a basis to allow the court to relieve defendant of its burden of proof by granting a defendant's motion for directed verdict.

{¶ 45} I would sustain the first assignment of error.