[Cite as *Andolsek v. Burke*, 2014-Ohio-3501.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100701

## YOLANDA ANDOLSEK

### PLAINTIFF-APPELLANT

vs.

## JOHN F. BURKE, III

### DEFENDANT-APPELLEE

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-776180

**BEFORE:**   Blackmon, J., S. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**       August 14, 2014

**ATTORNEY FOR APPELLANT**

Ravi Suri
28520 Hidden Valley Drive
Orange, Ohio 44022


**FOR APPELLEE**

John F. Burke, III
Burkes Law, L.L.C.
614 West Superior Avenue
Rockefeller Building, Suite 1500
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Yolanda Andolsek ("Andolsek") appeals the trial court's decision granting appellee John Burke, III's ("Burke") motion for directed verdict. Andolsek assigns the following errors for our review:

I. The trial court erred in granting directed verdict for the defendant.

II. The trial court erred in denying partial directed verdict for the plaintiff.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3} On February 16, 2012, Andolsek refiled a complaint previously voluntarily dismissed. In the refiled complaint, Andolsek alleged that sometime in 1998, she entered into a business agreement with Phil Sterrett ("Sterrett") whereby she would invest in a company that later became known as Star Metal Finishing ("Star Metal"). Andolsek alleged that pursuant to the agreement, Sterrett promised her a 50% interest in the business if it was successful, return of her investment if the business was unsuccessful, and that he would oversee the daily operations of the business.

{¶4} Andolsek alleged that over the next several years, she invested approximately $250,000 in the venture that she funded from personal savings and taking out two mortgages on her home. Andolsek alleged that Sterrett defrauded her by utilizing the money she invested for his personal needs, forging her signature to withdraw monies from the business account, and stealing equipment from the company. Andolsek alleged that as a result of Sterrett's actions, the business failed and she lost her total investment.

**{¶5}** Andolsek further alleged that during 2002, she sought legal representation regarding the matter from several attorneys including Burke, who had represented her previously in several unrelated matters. Andolsek alleged that she discussed the case with Burke, who orally agreed to represent her on a contingency fee basis against Sterrett.

**{¶6}** Andolsek alleged that subsequently and through 2010, she believed Burke was representing her against Sterrett, but discovered he had not commenced any action in the matter. Andolsek finally alleged that Burke eventually informed her that he was no longer willing to represent her against Sterrett, and she sought legal advice from another attorney, who informed her that the statute of limitations on all causes of action against Sterrett had expired.

## Jury Trial

**{¶7}** On November 7, 2013, after significant motion practices, a jury trial commenced. Andolsek presented the testimony of Attorney Lawrence Powers, whom she had subpoenaed. Powers testified that he had no recollection of meeting with Andolsek in 2010. Powers recognized his handwriting on documents that Andolsek's attorney showed him at trial.

**{¶8}** At trial, Andolsek's testimony substantially mirrored the allegations of her refiled complaint. In addition, Andolsek testified that after she discovered that Sterrett was taking out monies for unauthorized purposes, she demanded that he leave Star Metal, assumed total control of the daily operations, but it was too late to save the company.

{¶9}   Andolsek further stated that she consulted Burke for the purpose of suing Sterrett for fraud and breach of contract, among other things.   Andolsek insisted that Burke agreed to represent her in the matter and that Burke even represented her in legal issues arising from Star Metal's operation.   Andolsek said that in those matters, Burke represented her for free and he never presented a written fee agreement.

{¶10} At the conclusion of Andolsek's case in chief, Burke moved for directed verdict on three grounds, namely: (1) that Andolsek had no personal claim against Sterrett, but solely against Star Metal, (2) Andolsek had presented no evidence that Sterrett misappropriated corporate funds for his own purpose, and (3) Andolsek presented no expert testimony regarding the legal standard of care that Burke allegedly breached. The trial court denied the motion and Burke presented himself as a witness.

{¶11} Burke first met Andolsek in the late 1990s when he handled an unsuccessful appeal of a lawsuit her family had filed against a neighbor for harassment.   Burke stated that Andolsek would contact him periodically, complain that she was miserable working in her family's restaurant, and that she did not have a good relationship with her sister.

{¶12} Burke testified that on one of these occasions, Andolsek mentioned that she had gone into business with Sterrett, a customer of her family's restaurant, who she believed had stolen money from the business.   Burke asked Andolsek if she had any documents about the corporate structure or any written agreement between her and Sterrett regarding her investment, but Andolsek had nothing in writing.

**{¶13}** Burke testified that Andolsek subsequently gave him loan documents and checks, but no proof that Sterrett had stolen any money. Burke stated that Andolsek insisted that Sterrett was writing checks to himself, that he was a "con man" and did not have any money or assets. Burke specifically testified as follows:

> I went and sat down with her and took some notes of my discussion with her, and then I repeatedly told her after that point in time that you need to get me proof of two things before we can do anything. Those two things are that you need proof of your claims about this relationship, that you really were given a guaranty. And the problem was she had these corporate documents, and the corporate documents say that she is the president. She has no document whatsoever that indicates that Mr. Sterrett owned any of the company. All the documents she has indicate that he was just an employee of the company. She also didn't have any information for me that would lead me to believe, even if we were successful, that we would be able to collect any money.

Tr. 170-171.

**{¶14}** Burke testified that subsequently in 2005 or 2006, he represented Andolsek on some collection matters in Medina County, and in 2010 represented her in a case where she claimed that someone damaged her car. Burke stated that Andolsek has not paid for any of that work and that he never promised Andolsek he would file the case in question. Burke finally stated it was during the pendency of the instant matter he learned that in 2003 Andolsek had hired another attorney and had sued Sterrett separately.

**{¶15}** At the close of Burke's case, Burke renewed his motion for directed verdict. The trial court granted the motion, and Andolsek now appeals.

**<u>Directed Verdict</u>**

**{¶16}** Because of their common basis in fact and law, we address both assigned errors together. Andolsek argues the trial court erred by granting Burke's motion for directed verdict and denying her motion for partial directed verdict.

**{¶17}** Civ.R. 50(A)(4), which sets forth the grounds upon which a motion for directed verdict may be granted, states:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

*Friedland v. Djukic*, 191 Ohio App.3d 278, 2010-Ohio-5777, 945 N.E.2d 1095 (8th Dist.). *See also Crawford v. Halkovics*, 1 Ohio St.3d 184, 438 N.E.2d 890 (1982); *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.*, 65 Ohio St.3d 66, 600 N.E.2d 1027 (1992).

**{¶18}** A trial court's decision to grant a motion for a directed verdict involves a question of law, and therefore, an appellate court's review of that decision is de novo. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22, citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Lasley v. Nguyen*, 172 Ohio App.3d 741, 2007-Ohio-4086, 876 N.E.2d 1274 ¶ 18 (2d Dist.), citing *Dupler v.*

*Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980). Thus, the trial court's decision to grant a motion for a directed verdict is not granted any deference by the reviewing court. *Moore v. Kettering Mem. Hosp.*, 2d Dist. Montgomery No. 22054, 2008-Ohio-2082, ¶ 19, citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶19} In the instant case, Andolsek alleges that Burke is liable for legal malpractice based on his failure to file suit before the statute of limitation expired on her causes of action against Sterrett.

{¶20} The following elements are necessary to establish a cause of action for legal malpractice: (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Estate of Hards v. Walton*, 8th Dist. Cuyahoga No. 93185, 2010-Ohio-3596, citing *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167. The elements of a legal malpractice claim are stated in the conjunctive, and the failure to establish an element of the claim is fatal. *Id*., citing *Williams-Roseman v. Owen*, 10th Dist. Franklin No. 99AP-871, 2000 Ohio App. LEXIS 4254 (Sept. 21, 2000).

{¶21} With regard to the issue of liability for legal malpractice, we note that it is well settled in Ohio that in order to prevail on a legal malpractice claim a plaintiff must demonstrate, through expert testimony, by a preponderance of the evidence, that the representation of the attorney failed to meet the prevailing standard of care, and that the failure proximately caused damage or loss to the client. *Zafirau v. Yelsky*, 8th Dist.

Cuyahoga No. 89860, 2008-Ohio-1936, ¶ 27. Further, the Supreme Court made it clear that there must be a causal connection between the lawyer's failure to perform and the resulting damage or loss. *Jarrett v. Forbes*, 8th Dist. Cuyahoga No. 88867, 2007-Ohio-5072, ¶ 19, explaining *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997).

{¶22} Expert testimony is required to sustain a claim of legal malpractice, except where the alleged errors are so simple and obvious that it is not necessary for an expert's testimony to demonstrate the breach of the attorney's standard of care. *McWilliams v. Schumacher*, 8th Dist. Cuyahoga Nos. 98188, 98288, 98390, and 98423, 2013-Ohio-29, citing *Hirschberger v. Silverman*, 80 Ohio App.3d 532, 538, 609 N.E.2d 1301 (6th Dist.1992). *See also McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 461 N.E.2d 1295 (1984); *Rice v. Johnson*, 8th Dist. Cuyahoga No. 63648, 1993 Ohio App. LEXIS 4109 (Aug. 26, 1993); *Cross-Cireddu v. Rossi*, 8th Dist. Cuyahoga No. 77268, 2000 Ohio App. LEXIS 5480 (Nov. 22, 2000).

{¶23} Here, fatal to Andolsek's claim of legal malpractice is her failure to present any evidence, through experts testimony or otherwise, that the statute of limitations had run on the causes of action against Sterrett, nor any evidence that Burke breached the statute of limitations. For example, Andolsek put forth no evidence as to what the applicable statute of limitations for fraud, breach of contract, promissory estoppel, or breach of an oral agreement.

**{¶24}** In granting Burke's motion for directed verdict, the trial court underscored the necessity of putting forth the proper evidence by stating: "There has not been one shred of evidence regarding the fact that Mr. Burke violated a statute of limitations. There is not one iota of evidence put on by plaintiff that he missed a statute of limitations and/or that it was even through negligence."

Tr. 232.

**{¶25}** Under the circumstances, adhering to the applicable law cited above, the trial court had no option but to grant Burke's motion for directed verdict and deny Andolsek's motion for partial directed verdict. Accordingly, we overrule both assigned errors.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

SEAN C. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR