[Cite as *Harrod v. USAA Ins. Co.*, 2019-Ohio-2748.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JOSHUA HARROD, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 28220 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-2678 |
| | : | |
| USAA INSURANCE COMPANY, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of July, 2019.

. . . . . . . . . . .

JOHN A. SMALLEY, Atty. Reg. No. 0029540, 131 N. Ludlow Street, Suite 1400, Dayton, Ohio 45402
     Attorney for Plaintiffs-Appellees

JONATHON L. BECK, Atty. Reg. No. 0076709 and CHRISTINE N. FARMER, Atty. Reg. No. 0093824, 130 W. Second Street, Suite 1500, Dayton, Ohio 45402
     Attorney for Defendant-Appellant, Jesse Walling

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Jesse Walling, appeals following a jury verdict in the Montgomery County Court of Common Pleas in favor of Joshua Harrod in a personal injury case arising out of an automobile accident. Specifically, Walling challenges the trial court's denial of his motion for a directed verdict and the trial court's denial of his motion for a mistrial and new trial. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} This case stems from an automobile accident that occurred on September 13, 2013 in Dayton, Ohio. The accident occurred as a result of Walling's pulling in front of another vehicle while Walling was attempting to turn left onto Harshman Road from a private drive. Walling's vehicle was struck and pushed into another vehicle that was sitting in traffic. The driver of the vehicle sitting in traffic was plaintiff-appellee, Joshua Harrod.

{¶ 3} Harrod filed a negligence action against Walling for injuries he allegedly sustained in the collision. Harrod also named his own insurer, USAA Insurance Company ("USAA"), as a defendant in the action for purposes of asserting an uninsured/underinsured motorist claim. Although Harrod eventually dismissed his claim against USAA, USAA remained a named defendant on the case caption. However, to prevent any reference to insurance that might prejudice Walling at trial, the parties agreed to refer to the case as "*Joshua Harrod v. Jesse Walling*" rather than "*Joshua Harrod v. USAA Insurance Co.*"

{¶ 4} The case proceeded to a jury trial on June 12, 2018. Prior to trial, the trial court granted Walling's motion in limine to exclude Harrod from mentioning, referencing, or introducing the topic of liability insurance coverage. Also prior to trial, the parties stipulated that Walling was negligent in causing the automobile accident at issue. Therefore, due to the parties' stipulation, the only issue left for trial was whether Walling's negligence was the proximate cause of Harrod's injuries, and, if so, the nature and extent of those injuries.

{¶ 5} At trial, Harrod testified regarding the nature of the accident, the neck and back pain he suffered thereafter, and all the medical treatment he has received for his pain during the four years leading up to trial. Harrod testified that his neck pain subsided two or three months after the accident, but that his back pain continued to bother him. Harrod, who had served in the military for 15 years, indicated that his military career ended as a result of his back pain, which rendered him unable to perform his job duties. Harrod also testified that his back pain prevented him from sitting longer than 30 minutes, bending over to tie his shoes, and enjoying activities such as swimming and running.

{¶ 6} One of the doctors who examined Harrod, Dr. Jeffrey Scott Rogers, also testified at trial. Dr. Rogers testified that, to a reasonable degree of medical certainty, Harrod's back pain was related to the automobile accident at issue. On cross-examination, Walling questioned Dr. Rogers and Harrod regarding a pre-existing condition discovered in Harrod's lumbar spine. The pre-existing condition was described as a pars defect, which occurs when the vertebrae do not form correctly. Dr. Rogers testified that a pars defect is a congenital condition, meaning it is present since birth. Dr. Rogers also testified that a pars defect is asymptomatic, meaning it does not cause any

problems unless exacerbated by some kind of trauma. Harrod testified that he had never experienced any pain or trauma to his back prior to the accident. Walling elicited no evidence refuting that claim.

{¶ 7} In addition, Walling cross-examined Dr. Rogers on certain MRI reports that were generated six months after the accident. The MRI reports showed that Harrod suffered from certain degenerative conditions in his intervertebral discs. Walling, however, failed to elicit any evidence indicating that the degenerative conditions were present at the time of the accident or that Harrod had experienced any pain prior to the accident.

{¶ 8} At the close of evidence, Harrod moved for a directed verdict on the issue of whether Walling's negligence proximately caused him any injury. Over the objection of Walling, the trial court granted Harrod's motion, finding that reasonable minds could only conclude that Harrod was injured as a result of the accident. Therefore, due to the directed verdict, the jury was only charged with determining the nature and extent of Harrod's injury for purposes of awarding damages.

{¶ 9} During closing argument, Harrod's trial counsel used an overhead projector to display a jury interrogatory for purposes of showing the jury the different categories of damages. Immediately after the interrogatory was placed in the jury's view, Walling's counsel raised an objection, requested to approach the bench, and discreetly asked Harrod's counsel to remove the interrogatory. At a sidebar, Walling's counsel pointed out that the interrogatory contained the original case caption, "*Joshua Harrod v. USAA Insurance Company,*" which improperly referenced insurance.[1] Realizing the mistake,

---

[1] Walling's counsel did not request a limiting instruction on the use of the interrogatory

Harrod's counsel was amenable to the objection and continued his closing argument without the interrogatory. The jury was never informed as to why the interrogatory was removed from its view and no reference was ever made to the case caption.

{¶ 10} At the end of his closing argument, Harrod's trial counsel told the jury that the evidence "supports an award consistent with the *full available $100,000.*" (Emphasis added.) Trans. p. 230. Walling objected on grounds that the phrase "full available $100,000" was meant to inform the jury that Walling had liability insurance coverage. Walling requested an immediate curative instruction on the matter, but the trial court determined that a curative instruction would only emphasize the issue, which the court found to be innocuous. Walling also moved for a mistrial based on both of the references to insurance during closing argument, but the trial court overruled the motion.

{¶ 11} Following deliberations, the jury returned a verdict in favor of Harrod in the amount of $52,827.94. Walling now appeals from that judgment, raising two assignments of error for review.

**First Assignment of Error**

{¶ 12} Under his first assignment of error, Walling contends that the trial court erred in granting a directed verdict on the issue of proximate cause. We disagree.

{¶ 13} "An appellate court reviews a trial court's ruling on a motion for directed verdict de novo, as it presents the court with a question of law." *Lasley v. Nguyen*, 172 Ohio App.3d 741, 2007-Ohio-4086, 876 N.E.2d 1274, ¶ 18 (2d Dist.), citing *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 257, 741 N.E.2d 155 (2d Dist.2000). In conducting

---

and no such instruction was ever given by the trial court.

a de novo review, we apply the same standard the trial court should have used, without granting deference to the trial court's determination. *Id.*

{¶ 14} "In order to sustain a motion for a directed verdict, the court must find, after construing the evidence in a light most favorable to the non-moving party, that reasonable minds could only come to a conclusion adverse to the non-moving party." *Branford v. State Farm Ins. Co.*, 2d Dist. Montgomery No. 18464, 2001 WL 703858, *4 (June 22, 2001), citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998) and Civ.R. 50(A)(4). "In making this determination, the trial court must not weigh the evidence or judge the credibility of the witnesses." *Id.* Instead, "[w]here there is substantial evidence to support the case of the nonmoving party upon which reasonable minds could reach different conclusions, the motion for a directed verdict must be denied." (Citation omitted.) *Randall v. Mihm*, 84 Ohio App.3d 402, 406-407, 616 N.E.2d 1171 (2d Dist.1992). Therefore, "[t]he 'reasonable minds' test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the nonmoving party. * * *." (Citation omitted.) *Lasley* at ¶ 16.

{¶ 15} As noted above, Walling challenges the trial court's decision granting a directed verdict on the proximate-cause element of Harrod's negligence claim. "In order to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." *Kooyman v. Staffco Constr., Inc.*, 189 Ohio App.3d 48, 2010-Ohio-2268, 937 N.E.2d 576, ¶ 18, citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). (Other citation omitted.)

Although Walling concedes that he was negligent in causing the automobile accident in question, he nevertheless contends that, based on the evidence presented at trial, reasonable minds could have reached different conclusions on the issue of whether his negligence proximately caused any injury to Harrod. Therefore, according to Walling, the trial court erred when it granted a directed verdict in favor of Harrod on that issue.

{¶ 16} Proximate cause is generally established "where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act[.]" *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981). *Accord Heard v. Dayton View Commons Homes*, 2018-Ohio-606, 106 N.E.3d 327, ¶ 12 (2d Dist.). "Ordinarily, proximate cause is a question of fact for the jury." (Citations omitted.) *Smith v. Hess*, 2018-Ohio-3602, 108 N.E.3d 1266, ¶ 25 (2d Dist.). However, it is proper for a trial court to remove the question of proximate cause from the jury where the evidence demonstrates that there is no question the defendant's negligence caused some injury to the plaintiff. Civ.R. 50(A)(4). *See Darling v. Scheid*, 8th Dist. Cuyahoga No. 62464, 1993 WL 172971, *2 (May 20, 1993) (finding the trial court erred in not granting a directed verdict on the issue of proximate cause where reasonable minds could only conclude that defendant's negligence was the proximate cause of "*some* injury to the plaintiff"); *Smith v. Peterson*, 6th Dist. Erie No. E-79-54, 1980 WL 351484, *2 (Aug. 22, 1980) (finding that "[i]f, as to any of [plaintiff's] injuries, reasonable minds could conclude only that they were caused by the accident, then plaintiff's motion for directed verdict should have been granted, leaving to the jury the determination of which injuries were caused by the accident and the amount of recovery").

{¶ 17} " 'Defendants can avoid a directed verdict on this subject through cross-

examination, presentation of contrary evidence that the negligence was not the probable cause of the injury, or presenting evidence of alternative causes of the injury.' " *Ward v. Govt. Emps. Ins. Co.*, 2d Dist. Montgomery No. 24884, 2012-Ohio-2970, ¶ 19, quoting *Werth v. Davies*, 120 Ohio App.3d 563, 570, 698 N.E.2d 507 (1st. Dist.1997), citing *Stinson v. England*, 69 Ohio St.3d 451, 456–57, 633 N.E.2d 532 (1994). Therefore, a defendant is not required to put on testimony about the cause of an injury or to provide an alternative theory about causation, but may instead rely on cross-examination to negate the plaintiff's evidence of proximate causation. *Staley v. Allstate Property Cas. Ins. Co.*, 10th Dist. Franklin No. 12AP-1085, 2013-Ohio-3424, ¶ 33; *Stinson* at 455-56. *See also Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906, ¶ 33-38 (to avoid directed verdict on causation of plaintiff's disc herniation, defendant was not required to present own expert medical testimony; rather, through cross-examination, the defendant could cause the jury to question the conclusion that the injuries were the result of the accident).

{¶ 18} In *Ward*, this court affirmed a trial court's denial of a motion for a directed verdict on the issue of proximate cause. The plaintiff in *Ward* was a pedestrian who filed a negligence action against a motorist who struck the plaintiff in a crosswalk. *Id.* at ¶ 1-2. Even though the plaintiff presented uncontroverted medical expert testimony that the plaintiff's foot injuries were caused by the accident, we affirmed the trial court's decision denying a directed verdict on the issue of proximate cause. *Id.* at ¶ 16-22. We reached this conclusion because an independent eyewitness testified that he observed the plaintiff trip over her sandal and fall into the motorist's vehicle. *Id.* at ¶ 21. Therefore, we concluded that, when construing the evidence most strongly in favor of the motorist,

reasonable minds could reach different conclusions as to whether the plaintiff's injury was caused by the initial trauma of plaintiff tripping or by the vehicle striking the plaintiff.   *Id.* at ¶ 22.

{¶ 19} Another example of a personal injury case where the trial court denied a motion for a directed verdict on the issue of proximate cause is *Marsico v. Skrzypek*, 9th Dist. Lorain No. 13CA010410, 2014-Ohio-5185.   In *Marsico*, the plaintiff filed a negligence action for neck, back, and shoulder injuries allegedly sustained in three motor vehicle accidents.   *Id.* at ¶ 2-3.   Although the plaintiff presented expert medical testimony demonstrating that the accidents caused the plaintiff's injuries, there was also evidence establishing that the plaintiff "had a history of prior automobile accidents, prior right shoulder surgery, arthritis, several prior instances of reported back pain, neck stiffness that would bother him on occasion, and several knee surgeries to both knees." *Id.* at ¶ 22.   In addition, there was evidence indicating that the plaintiff's perception of the first accident was inaccurate.   For example, the plaintiff testified that it felt like he was hit by a truck and that he expected the entire rear of his car to have been smashed, yet the defendant was only traveling 25 m.p.h. during the collision and the plaintiff's vehicle suffered little to no damage.   *Id.* at ¶ 36.   Given the evidence of the plaintiff's prior pain and injuries and the nature of the accident, the court concluded that reasonable minds could reach different conclusions as to whether the accidents were the proximate cause of the plaintiff's injuries.   *Id.*

{¶ 20} The present case is distinguishable from both *Ward* and *Marsico* because there is no evidence that Harrod suffered any trauma or pain to his back prior to the collision at issue.   Also, unlike *Marsico,* Harrod's testimony regarding the nature of the

accident was consistent with his alleged back injury. For instance, Harrod testified that the driver-side door of his vehicle was impacted during the accident and that the impact caused his body to be "thrown from the left side to the right side," which "wrenched his back and caused him to contort." Trans. p. 110. Photographic evidence of Harrod's vehicle after the accident established that Harrod's driver-side door was caved inward from the impact. The evidence also established that the driver-side door was hit so hard that it would not open and that Harrod had to exit his vehicle from the passenger-side door.

{¶ 21} Also, in establishing proximate cause, Harrod testified that he felt pain in his back and neck shortly after the collision. Due to the pain, Harrod testified that his wife took him to the emergency room approximately one or two hours after the accident. The emergency room records admitted into evidence note that Harrod was injured in a motor vehicle accident and indicate that Harrod was diagnosed with back spasms, back pain, and muscle strain. The records specifically provided that Harrod's back was "[tender to palpation] from mid thoracic area to Lumbar with palpable muscle spasms of the right and mid thoracic paraspinal muscles." State's Exhibit No. 2 and Court's Exhibit III, p. 16. The records further established that Acetaminophen, Ibuprofen, and Dilaudid were administered for Harrod's pain. At discharge, Harrod was also prescribed two other pain relievers, Tramadol and Lidocaine.

{¶ 22} The record also includes testimony from Dr. Jeffrey Scott Rogers, a non-operative spine specialist who examined Harrod in March 2014. At trial, Dr. Rogers opined to a reasonable degree of medical certainty that Harrod's back pain was related to the September 2013 collision. The medical records admitted into evidence also

indicated that Dr. Patrick O'Bryan, a chiropractor who examined Harrod two weeks after the collision, found that Harrod's "symptoms, complaints and examination findings are indicative of findings found from a [motor vehicle accident]."   Defendant's Exhibit A.

{¶ 23} While Walling pointed to medical records establishing that Harrod had a pre-existing, congenital pars defect in his lumbar spine, on cross-examination, Dr. Roger's testified that such a defect is asymptomatic.   Specifically, Dr. Roger's testified that a congenital pars defect causes no problems unless there is some kind of trauma, such as a fall, accident, or other injury.   *See* Court's Exhibit III, p. 14.   Medical records from Dr. O'Bryan's office also indicate that Harrod's pars defect was asymptomatic and that the condition was worsened as a result of the collision.   *See* Defendant's Exhibit A.

{¶ 24} There was no evidence in the record establishing that Harrod's pars defect was exacerbated by trauma prior to the accident in question.   The only evidence of trauma concerned a military training injury that Harrod suffered in December 2015. Because that injury occurred two years after the accident, it did not account for the back pain and muscle spasms that Harrod experienced shortly after the collision.

{¶ 25} There was also no evidence establishing that the pars defect ever caused Harrod any pain prior to the accident.   Although there was evidence indicating that Harrod's pars defect was observed on a military x-ray taken in 2005, there was nothing in the record indicating that the x-ray was taken as the result of Harrod experiencing any pain.   In fact, Harrod testified that he had no memory of the 2005 x-ray and that it was likely taken for an army physical.   Harrod also testified that he was unaware of the pars defect until after the accident with Walling.

{¶ 26} Walling also pointed to MRI reports that showed Harrod's lumbar spine

exhibited intervertebral disc dehydration and desiccation, which are degenerative conditions associated with aging. However, contrary to Waling's claim otherwise, the MRI reports did not specifically demonstrate that the degenerative issues were present prior to the accident, as the reports were generated six months after the accident occurred. Even assuming the degenerative issues were present prior to the accident, the fact remains that there was no evidence of Harrod's having any pain or discomfort in his back before he was struck by Walling's vehicle.

{¶ 27} Despite this, Walling argues that a jury could have reasonably concluded that Harrod suffered no injury as a result of the collision because he reported having no back pain during a fitness evaluation that was conducted in February 2015 for deployment overseas. However, the pertinent medical record relied on by Walling does not support this claim. The medical record at issue specifically provided that Harrod reported "back pain and pain localized to one or more joints" and that he had "intermittent low back pain which has NOT limited his job performance or fitness capacity." Defendant's Exhibit E. Therefore, the record does not indicate that Harrod reported no back pain. Rather, the record indicates that Harrod reported his back pain and fought through the pain so that he could be cleared for overseas duty.

{¶ 28} Walling also argues that a jury could have reasonably concluded that Harrod suffered no injury from the accident because Harrod passed a military fitness exam in January 2014. We disagree. Harrod's ability to pass a fitness exam four months after the collision does not negate the evidence of back pain and spasms that Harrod experienced shortly after the accident. Rather, passing the fitness exam in question goes toward the nature and extent of Harrod's back injury. The fact that Harrod

could pass a fitness exam four months after the accident may indeed lead reasonable minds to believe that his injury had healed or was not as severe as he claimed. But, given the four month passage of time, Harrod's ability to pass the fitness test was not substantially probative of the fact that Harrod was not injured in the accident.

{¶ 29} Based on the evidence presented at trial, we find that reasonable minds can only conclude that the collision was the proximate cause of some injury to Harrod's back. This is because the evidence established that Harrod had never experienced any back pain or trauma prior to the accident, felt back pain shortly after the accident, and was diagnosed with back spasms and muscle strain during his emergency room visit following the accident. Therefore, even when viewing the evidence in a light most favorable to Walling, a directed verdict on the issue of proximate cause was proper.

{¶ 30} Walling's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 31} Under his second assignment of error, Walling contends that the trial court erred in overruling his motion for a mistrial and new trial. Walling maintains that a mistrial was warranted because he was substantially prejudiced when Harrod's trial counsel made certain references to liability insurance coverage during closing argument. We disagree.

{¶ 32} A mistrial should be declared only when a fair trial is no longer possible. *Ockenden v. Griggs*, 10th Dist. Franklin No. 07AP-235, 2008-Ohio-2275, ¶ 11, citing *State v. Franklin*, 62 Ohio St.3d 118, 580 N.E.2d 1 (1991). "It is within the sound discretion of the trial court to declare a mistrial, discharge the jury, and cause a new jury to be

impaneled when the court finds improper behavior or argument on the part of one of the parties." (Citation omitted.) *Patricoff v. Burnett*, 2d Dist. Montgomery No. 7726, 1982 WL 3810, *2 (Oct. 4, 1982). Therefore, "[a] reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion." (Citation omitted.) *Ockenden* at ¶ 11.

{¶ 33} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 34} As previously noted, Walling maintains that a mistrial should have been granted because Harrod's trial counsel made certain references to liability insurance coverage during closing argument. "Generally, the question of liability insurance should not be brought into a personal injury case." (Citations omitted.) *Sipniewski v. Leach*, 2d Dist. Montgomery No. 8123, 1983 WL 2485, *4 (Oct. 4, 1984). " '[E]vidence of liability insurance is highly prejudicial and is admissible at trial only if directly relevant to an issue at trial[,]' as it may improperly influence a jury with respect to their finding of liability or damages." *Ockenden* at ¶ 13, quoting *Hanna v. Redlin Rubbish Removal, Inc.*, 9th Dist. Summit No. 15280, 1992 WL 67092, *2 (Apr. 1, 1992). (Other citation omitted.) "Therefore, the introduction of evidence of liability insurance coverage in a personal injury trial is usually grounds for mistrial." (Citations omitted.) *Id.* "However, when insurance

is inadvertently brought into the evidence by no intentional misconduct on the part of either witness or counsel, a mistrial is not required unless prejudicial error results." *Sipniewski* at *4, citing *Oney v. Needham*, 10 Ohio App.2d 15, 225 N.E.2d 280 (4th Dist.1966).

{¶ 35} In *Sipniewski*, this court found no prejudicial error where the plaintiff unexpectedly mentioned insurance during cross-examination. *Id*. at *4-5. The plaintiff mentioned insurance after defense counsel asked how the plaintiff obtained a certain medical record. *Id*. at *4. In response to the question, the plaintiff stated: "Allstate Insurance gave me some forms to have the doctors I saw fill out." *Id*. Defense counsel then said: "When you talk about Allstate insurance, Allstate is the one that paid for the damage to your car, isn't that correct?" To which the plaintiff responded, "Yes." *Id*. We found that the plaintiff's unexpected comment about insurance was not prejudicial because defense counsel confined the topic of insurance to the plaintiff's car repairs. *Id*. Therefore, we concluded the trial court did not abuse its discretion in denying the defendant a new trial. *Id*. at *5.

{¶ 36} Similarly, in *Mong v. Dotson*, 2d Dist. Darke No. 1173CA, 1987 WL 8029 (Mar. 17, 1987), this court found no prejudicial error under circumstances where the plaintiff and the plaintiff's attorney made multiple, indirect references to insurance when discussing the individuals who examined the plaintiff's damaged vehicle to determine whether it was repairable or a total loss. *Id*. at *2. We found that the plaintiff specifically mentioned an insurance company only one time during the discussion, and that the reference was made in response to a question that "[did] not appear reasonably calculated to have elicited such a response." *Id*. Under these circumstances, we found

that the reference to insurance was "inadvertent and de minimus." *Id.* Therefore, we held that "the record [did] not reflect the sort of intentional reference to insurance coverage that is grounds for a mistrial." *Id.* *See also Britton v. Gibbs Assocs.*, 4th Dist. Highland No. 08CA9, 2009-Ohio-3943, ¶ 41 (finding plaintiff's testimony, which briefly touched upon defendant's liability insurance, did not constitute grounds for a mistrial where the testimony was not intentionally elicited by trial counsel and did not touch on the issue of whether the defendant acted negligently); *White v. Columbus Green Cabs, Inc.*, 10th Dist. Franklin No. 82AP-313, 1982 WL 4457, *2 (Oct. 7, 1982) (finding no prejudice warranting a mistrial where the plaintiff's reference to insurance "neither inferred nor related to whether defendants had insurance" and there was not "any indication of bad faith on plaintiff's part").

**{¶ 37}** Walling, however, relies on the holdings in *Hanna*, 9th Dist. Summit No. 15280, 1992 WL 67092, *Ockenden*, 10th Dist. Franklin No. 07AP-235, 2008-Ohio-2275, and *Tackett v. Robertson*, 2d Dist. Montgomery No. CA 11597, 1990 WL 54970 (Apr. 25, 1990), for the proposition that the trial court abused its discretion in finding that defense counsel's references to insurance during closing argument did not warrant a new trial. Walling's reliance on these cases is misplaced.

**{¶ 38}** In *Hanna*, the Ninth District Court of Appeals held that the trial court abused its discretion in failing to grant a mistrial where insurance coverage was mentioned during plaintiff's opening statement and during the direct examination of the plaintiff's husband. The plaintiff's husband testified that his wife went to see a certain doctor "on the recommendation of the insurance company." *Id*. at *1. The plaintiff's attorney also announced during opening statements that the plaintiff had visited a particular doctor

upon the request of defense counsel. *Id.* at \*2. The Ninth District found that such a statement permitted the logical inference that "the defense and the insurer were closely allied, if not one and the same." *Id.* Although the trial court instructed the jury to disregard any and all reference to insurance, the appellate court found the offending statements warranted a mistrial. *Id.* at \*3. In so holding, the appellate court was not persuaded by the plaintiff's argument that no prejudicial error resulted because the disclosure was "unintended." *Id.* at \*2.

{¶ 39} In *Ockenden*, the Tenth District Court of Appeals held that a trial court abused its discretion in failing to grant a mistrial where the plaintiff stated that her alleged treatment with a certain doctor was "concocted by [the defendant's] insurance company." *Id.* at ¶ 3-4. In reaching this decision, the court explained that the plaintiff's testimony "did not only mention the word 'insurance,' but directly tied the existence of insurance to the defendant (i.e., 'your insurance company')." *Id.* at ¶ 24. Therefore, the court was "confronted with a situation in which the plaintiff ha[d] testified: (1) that insurance exists; (2) that the insurance is the defendant's insurance carrier; and (3) that the defendant's insurance carrier 'concocted' or fabricated an examination of the plaintiff." *Id.* at ¶ 25. The court found that the improper references to insurance were exacerbated by the plaintiff's husband, who testified that the doctor at issue had lied about treating the plaintiff. *Id.* at ¶ 27. Based on the totality of the circumstances, the Tenth District concluded that the situation could only be cured by a mistrial because a fair trial was no longer possible. *Id.* at ¶ 27-28.

{¶ 40} In *Tackett*, a case that was decided by this court, there was no issue regarding an improper reference to insurance coverage. Rather, the plaintiff's counsel

in *Tackett* made prohibited statements regarding damages during closing argument. Specifically, the trial court told the plaintiff not to argue future medical expenses because there was no evidence of such expenses presented at trial. *Id.* at *1. The trial court also told plaintiff not to refer to a life table when discussing damages because there was insufficient evidence of permanent injury. *Id.* Despite these instructions, plaintiff's counsel made the prohibited arguments and references during closing argument. *Id.* at *2. The jury thereafter awarded the plaintiff $100,000 when the exhibits from the medical bills showed that the plaintiff only incurred approximately $8,000 in expenses. *Id.* at *4. Given the excessive damages awarded, we concluded that the jury was unduly influenced by the improper statements at closing argument and held that a new trial should have been granted. *Id.* at *5.

{¶ 41} Upon review, we find that *Hanna*, *Ockenden*, and *Tackett* are all distinguishable from the present case. Unlike *Tackett*, the present case involves references to insurance coverage. As previously noted, Harrod's trial counsel showed the jury an interrogatory that contained the incorrect case caption "*Joshua Harrod v. USAA Insurance Company*" and then later requested the jury to award Harrod the "full available $100,000." *Tackett* is distinguishable because the jury in that case was specifically told by plaintiff's counsel to consider improper damages, which resulted in an excessive award. That is simply not the case here.

{¶ 42} Similarly, *Hanna* and *Ockenden* are distinguishable from the present case because they involved direct references to insurance that occurred during direct and cross-examinations. In this case, the references to insurance were both indirect and made during closing argument. It is well established that "[s]tatements made in * * *

closing arguments are not evidence upon which a jury can rely." *Renn v. T.T.C., Inc.*, 2d Dist. Montgomery No. 15433, 1996 WL 531598, *3 (Sept. 20, 1996), citing *State v. Frazier*, 73 Ohio St.3d 323, 338, 652 N.E.2d 1000 (1995). Here, the trial court specifically instructed the jury not to consider the statements of counsel and their closing arguments as evidence. Because " '[a]ppellate courts should be slow to impute to juries a disregard of their duties[,]' " we cannot presume that the jury failed its duty to not consider counsel's closing argument as evidence. *Waldron v. Miami Valley Hosp.*, 2d Dist. Montgomery No. 14108, 1994 WL 680152, *12 (Dec. 7, 1994), quoting *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct.252, 77 L.Ed. 439 (1933).

**{¶ 43}** In addition, the record indicates that counsel's act of displaying the incorrect case caption to the jury was inadvertent. Furthermore, the caption was never referenced during trial and was immediately removed from the jury's view when Walling objected. There is absolutely nothing in the record indicating that the jury took notice of the caption let alone associated it with liability insurance coverage.

**{¶ 44}** As for the phrase "full available $100,000," Harrod claimed that it was meant to refer to his demand for damages. Indeed, before requesting the "full available $100,000," Harrod's counsel advised the jury that Harrod was demanding $100,000 for his medical expenses and non-economic damages. Under these circumstances, it would be reasonable to assume that the jury associated the phrase "full available $100,000" with Harrod's earlier demand for damages as opposed to liability insurance coverage. Therefore, without any direct reference to insurance, it was reasonable for the trial court to find that Walling suffered no prejudice as a result of the comment.

**{¶ 45}** In light of the foregoing, and based on the totality of the circumstances, we

do not find that the trial court abused its discretion in denying Walling's motion for a mistrial and new trial. Both references to insurance were seemingly inadvertent and of such a passive, indirect nature that it was reasonable for the trial court to conclude that the references did not prevent Walling from receiving a fair trial.

{¶ 46} Walling's Second Assignment of Error is overruled.


## Conclusion

{¶ 47} Having overruled both assignments of error raised by Walling, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.



Copies sent to:

John A. Smalley
Jonathon L. Beck
Christine N. Farmer
C. Joseph McCullough
Hon. William Wolff, Jr., Visiting Judge
c/o Hon. Gregory F. Singer, Administrative Judge